USCA1 Opinion

 

 [NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 99-1337

 STEPHEN ISABELLE,

 Plaintiff, Appellant,

 v.

 NISSAN NORTH AMERICA, INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE
 
 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 
 
 
 Brian C. Shaughnessy, with whom Normand & Shaughnessy, P.A.
was on brief for appellant.

 Richard P. Campbell, with whom Lisa DeBrosse Johnson and
Campbell Campbell & Edwards PC were on brief for appellee. 

October 15, 1999

 
 PER CURIAM. This diversity jurisdiction case is on
appeal from a grant of summary judgment for the defendants in a
products liability case based on an alleged design defect. The
district court ruled that under New Hampshire law the plaintiff in
a strict liability defective design case must show that the
defective product reached the plaintiff without substantial change
in its condition. That ruling is the sole issue before us.
 I.
 We recite the undisputed facts as stated by the district
court:
 On August 25, 1993, the plaintiff was
 working as a used car salesman for his
 employer, Auto City of Manchester, when he
 drove a 1985 King Cab Nissan pickup truck
 across a car lot for a customer. He proceeded
 at a low speed, approximately ten miles an
 hour. As he stepped on the brake, the seat
 slid forward freely, pushing the plaintiff
 forward as well. As a result, his foot
 pressed hard on the brake, stopping the truck
 abruptly. This caused him to be thrown
 forward and backward. He hit his head on a
 sun visor and suffered lacerations, bruising,
 and severe injuries to his back, head, neck,
 and arms, as well as other injuries. After
 the incident the plaintiff examined the seat. 
 He found that the seat adjuster lever, which
 locked and released the seat on its track, was
 caught on a tool pack stored beneath the seat. 
 The plaintiff asserts that the tool pack
 prevented the seat from locking into place and
 allowed the seat to slide forward and backward
 freely.

 The plaintiff does not know the present
 location or the present owner of the vehicle,
 and has not seen the vehicle since the date of
 the incident. The plaintiff's witnesses,
 including his expert witness, have not
 examined the vehicle or any of its component
 parts. At the time of the incident the
 vehicle was eight years old with 144,973 miles
 on its odometer, its exterior was heavily
 rusted, its interior was filthy, and the seats
 were in poor condition. The plaintiff does
 not know whether, as of the time of the
 incident, the strap that held the tool pack in
 place, the tool pack itself, the seat adjuster
 lever, or the seat track, were original parts
 or in the same or similar condition as when
 the truck was manufactured and originally
 sold, or, with the exception of the tool pack,
 even if they were manufactured or sold by the
 vehicle manufacturer or its distributor. 
 Moreover, in February 1990, the truck had had
 an accident on Interstate 93, suffered
 extensive damage, and was declared "totaled"
 for insurance purposes. The plaintiff does
 not know whether the seat track, the seat
 adjuster lever, or any of the component parts
 for moving the seat were damaged in the
 accident or otherwise.

 We describe the alleged design defect as the plaintiff
did in his brief at 6-7.
 The 1985 Nissan King Cab pickup truck was
 designed to hold a tool pack which contained
 the vehicle's tire iron and other accessories
 under the driver's seat of the vehicle. The
 tool pack was designed to be held in place by
 a rubber fastening strap which would hold the
 tool pack to the mounting frame of the front
 seat. The mounting frame and tool pack are
 stationary as are the seat rails which allow
 for the adjustment of the seat both forward
 and backward. The front seat, along with the
 adjustment lever which is attached to the
 front seat, move forward and backward on the
 seat rails and allow for adjustment to the
 desired position by the driver. When the seat
 is adjusted to its rear-most position, the
 seat adjustment lever is located directly
 above the storage area for the tool pack. 

 Plaintiff offered to show, based on his examination of
the seating mechanism of the truck, that on the date of the
accident a tool pack was located directly under the driver's seat
as intended by the manufacturer of the truck. Plaintiff contends
that this was a design defect because it allowed the seat adjuster
lever on the driver's seat to become stuck on the tool pack and
thus prevented the seat from locking into place. The result was
that when the plaintiff applied the brakes as the truck was moving
forward, the seat suddenly slid forward injuring plaintiff's head
and cervical spine.
 II.
 Both parties and the district court relied primarily on
the New Hampshire case of Thibault v. Sears, Roebuck & Co., 118
N.H. 802, 395 A.2d 843 (1978). In Thibault, the New Hampshire
Supreme Court carefully explained the design defect theory of
strict products liability. It held specifically:
 Accordingly, we hold that the trial court
 should not read RSA 507:7-a (Supp. 1977) in a
 jury charge on the strict liability count,
 . . . . The trial court should read or
 paraphrase Restatement (Second) of Torts
 402A(1) and (2) to the jury; the jury should
 then usually be asked by special verdict if
 plaintiff's proof has met the requirements of
 the Restatement. If plaintiff's proof is
 sufficient, the jury must [then consider
 defenses]. (Emphasis added.) 

Id. 118 N.H. at 813, 395 A.2d at 850.

 The Restatement (Second) of Torts 402A provides in pertinent part:
 Special Liability of Seller of Product for
 Physical Harm to User or Consumer
 (1) One who sells any product in a defective
 condition unreasonably dangerous to the user
 or consumer or to his property is subject to
 liability for physical harm thereby caused to
 the ultimate user or consumer, or to his
 property, if
 (a) the seller is engaged in the business of
 selling such a product, and
 (b) it is expected to and does reach the user
 or consumer without substantial change in the
 condition in which it is sold.

(Emphasis added.) We agree with the district court that subsection
(1)(b) is a requirement of New Hampshire law. The plaintiff spins
a complex and lengthy argument that Thibault did not adopt
subsection (1)(b) and, if it did, subsequent cases make the holding
dubious. We disagree. First of all, Thibault is clearly on point
and we have been unable to find any New Hampshire case even
arguably to the contrary. Secondly, our own circuit precedent
squarely holds that Section 402A in its entirety has been adopted
by the Supreme Court of New Hampshire. Raymond v. The Raymond
Corp., 938 F.2d 1518, 1520-21 (1st Cir. 1991); Fortier v. Olin
Corp., 840 F.2d 98, 99 (1st Cir. 1988).
 Finally, we consider plaintiff's alternative argument. 
Plaintiff says that even if subsection (1)(b) applies, a reasonable
jury could find it to be satisfied in this case. He argues (based
on his expert's proferred judgment) that the dangerous condition
created by the manufacturer was to locate the kit under the seat;
and he says that his own testimony, albeit based on only a brief
look under the seat before the vehicle disappeared for good, would
permit a jury to find that this condition pertained "without
substantial change" at the time of the accident. 
 Even if "change in condition" were read so narrowly, we
do not see how a jury could find causation without more information
as to the condition of the truck. There is nothing to show that
the pack, strap, seat, track or adjuster lever were original
equipment or properly operating or otherwise in good repair. Thus,
given the age and prior damage to the truck, it would be sheer
speculation for a jury to conclude that it was the alleged defect
rather than some intervening change or damage to other parts that
led to the accident in this case. 
 Affirmed. Costs awarded to appellee.